**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| Eastern Continental Mining and | ) | |
| Development Ltd., | ) | Case No.: 16-_____ |
| | ) | |
| Debtor. | ) | |

**VERIFIED PETITION OF NINOS KOUMETTOU, AS
FOREIGN REPRESENTATIVE OF EASTERN CONTINENTAL
MINING AND DEVELOPMENT LTD., FOR (I) RECOGNITION OF
FOREIGN MAIN PROCEEDING AND (II) CERTAIN RELATED RELIEF**

Ninos Koumettou, in his capacity as the liquidator and authorized foreign representative (the "Foreign Representative") for the above-captioned debtor (the "Debtor") in a proceeding (the "UK Proceeding") commenced under the United Kingdom's Insolvency Rules 1986, respectfully submits (i) the Chapter 15 petition of the Debtor filed contemporaneously herewith (the "Chapter 15 Petition"), and (ii) this verified petition (the "Verified Petition") for an order recognizing the UK Proceeding as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") and granting such other and further relief as this Court deems just and proper. In support of this Verified Petition and request for related relief, the Foreign Representative respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code. These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the UK Proceeding under section 1515 of the Bankruptcy Code. This is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code. Venue is proper in this District pursuant to

section 1410 of title 28 of the United States Code. The statutory predicates for the relief requested herein are sections 105(a), 362, 364, 365, 1517 and 1521 of the Bankruptcy Code.

## BACKGROUND

2.     The Debtor was incorporated on May 18, 2010 under the Companies Act 2006 as a private company by the Registrar of Companies for England and Wales. The Debtor's registered office and principal place of business is located at 59-60 Cornhill, 1st Floor, London EC3V 3PD, England. The Debtor has approximately eighty shareholders and two officers - Secretary and Director Lawrence Denault and Director David Pape.

3.     Based in London, the Debtor was formed to explore and develop direct investment opportunities in the Asian raw materials and mineral resources sector. The Debtor planned to construct networks of mineral mining and collection, processing and shipping centers. Its principal focus was developing opportunities in Indonesia, with a view to exporting to other Asian economies including China, India, Japan, and Korea. As part of its commitment to sustainable development, all of the Debtor's projects were tailored to advance the interests of local communities – a key selling points to gain the support of the Indonesian government. The Debtor's micro port projects were to open isolated districts to new development opportunities, employment opportunities and investments in local infrastructure. Additionally, the micro ports would also help reduce waste and increase productivity by bringing new levels of efficiency to an otherwise outdated trade cycle.

4.     Debtor looked at and evaluated over 100 potential projects. After identifying the ones that were potentially the most lucrative, the Debtor entered into a joint venture with the holders of six concessions for mining from the government of Indonesia, all of which were located on the islands of Sumatra and Java. The Debtor's plan was to focus initially on

establishing mining and related operations for the mining of iron sand on Java. Iron sand mining is the fastest and least capital intensive way to enter the mining sector, and iron sands contain high amounts of iron and other valuable minerals and metals.

5. After generating revenues through its iron sand concession on Java, Debtor planned to mine for iron ore on an adjacent concession and prepare to build up additional processing for the separation and processing of titanium dioxide from the iron sands.

6. To execute its plans, Debtor needed to raise $50 million in capital. Signet Group LLC ("SG") indicated that it had the unique capability to raise the required funds for the Debtor. In connection with its efforts to raise such funds, Debtor spent substantial sums, mainly through payments to SG, entities affiliated with SG and/or entities with which SG had or desired to have an ongoing working relationship.

7. Both Debtor and SG determined that, if the $50 million could be raised, within 12 months of the commencement of the iron sand project, Debtor would have a profit of $4 million. Debtor and SG further determined that in the ensuing years, Debtor could, through its iron sands concession, expect to have profits of $19 million to $78 million per year.

8. SG proposed to raise the required funds by: (a) assembling and acquiring a pool of life insurance policies; (b) forming an entity to issue $500 million in notes, the obligations of which were to be covered by proceeds from the life insurance policies; and (c) use $50 million of the $500 million in proceeds from the notes offering to provide the funding for Debtor's mining project.

9. Unfortunately, SG was not truthful about its accomplishments and ability to raise the necessary funds. SG wrongfully led Debtor to believe that SG had the experience and capacity to discharge its contractual obligations when SG plainly did not. Thus, while SG led

Debtor to believe that SG had a track record of success, that was not the case. In actuality, SG had never accomplished any financing of the type sought by Debtor. Debtor would not have entered into agreements with SG and incurred over $1 million in costs if SG had not misled Debtor about SG's accomplishments.

10. Further, SG breached its obligations under its retention agreement (the "Retention Agreement") with the Debtor. Based on the plain language of the Retention Agreement, SG made binding commitments to Debtor to perform the services "necessary or appropriate ... for the acquisition of" interests in 600 or more life insurance policies and/or to "assure" the acquisition of such policies. These commitments went to the heart of the services that SG was to provide. Without the assets that were to serve as the source of payments of the notes to investors, the notes could not be issued, and thus the funds that were to be loaned to Debtor to finance its mining project could not be raised. Despite its commitments, SG never performed its duties. SG did not, as it was required to do, perform those services "necessary or appropriate, applying normal and customary industry standards, for the acquisition" of approved assets, nor did it "assure" the acquisition of the Approved Assets.

11. SG's failure to fulfill its obligations the Retention Agreement has resulted in multi-million dollar losses to Debtor. If SG had performed the services necessary to acquire and/or "assured" the acquisition of the source of payments for the notes (i.e., the pool of life insurance policies), there would have been no reason for the issuance of the notes, and the funding of Debtor's mining operations, not to occur. It was SG's failure in this regard that prevented the financing of Debtor's project from occurring. Debtor lost the opportunity to participate in the joint ventures that had been granted concessions by the government of Indonesia.

12. SG appears to have discontinued its business and transferred its assets and operations to Cygnus LS, LLC. Debtor asserts that this business scheme was an attempt by SG and its principals to hide assets and avoid making payment to Debtor.

13. On or about March 22, 2013, the Debtor filed a complaint in the Southern District of New York against SG and several of its individual principals alleging breach of the Retention Agreement and fraudulent misrepresentation. An amended complaint was filed to add Cygnus LS, LLC as a party. SG filed a counterclaim against the Debtor alleging that the Debtor had breached the Retention Agreement and owes SG in excess of $250,000. Although several of the parties have since been dismissed from the litigation, the case is currently scheduled for trial beginning March 8, 2016.

14. As the Debtor was never able to obtain the financing necessary to conduct its operations, on or about January 13, 2016, the Debtor's shareholders voted to voluntarily wind up the company pursuant to the United Kingdom's Insolvency Rules 1986 and appointed Ninos Koumettou as liquidator and foreign representative of the company. True and correct copies of the special resolution and ordinary resolution and related documents initiating the winding up of the company are collectively attached hereto as Exhibit "A". After his appointment, Ninos Koumettou directed the filing of a voluntary petition under Chapter 15 of the Bankruptcy Code in this Court.

**RELIEF REQUESTED**

15. The Foreign Representative seeks entry of an order, substantially in the form attached hereto as, granting the following relief: (a) recognition of the UK Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code in respect of the Debtor; (b) automatic relief as of right upon recognition of a foreign main proceeding pursuant

to section 1520 of the Bankruptcy Code; (c) giving full force and effect to the UK Proceeding; and (d) awarding such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

**I. This Chapter 15 Case Concerns a Foreign Proceeding.**

16. Section 101(23) of the Bankruptcy Code provides as follows:

> The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The UK Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because it is an administrative proceeding pending in England under the Insolvency Rules 1986, and the assets and affairs of the Debtor are subject to the control and supervision of an English administrative agency, if necessary, for the purpose of liquidation.

**II.    This Chapter 15 Case Has Been Commenced by a Duly Authorized Foreign Representative.**

17. The Foreign Representative is duly authorized to serve in this capacity in these chapter 15 cases. The term "foreign representative" is defined under section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

18. Pursuant to the special and ordinary resolutions, the Debtor appointed the Foreign Representative as "Liquidator" in the UK Proceeding and expressly authorized and directed the

Foreign Representative to file a chapter 15 case in the United States. Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101 (24) of the Bankruptcy Code.

### III. This Chapter 15 Case Has Been Properly Commenced.

19. This chapter 15 case was duly and properly commenced by filing the Chapter 15 Petition and this Verified Petition accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (ii) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of the Chapter 15 Petition, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representative; and (d) copies of the relevant resolutions and related documents.

20. Having filed the above-referenced documents and because this Court is entitled to presume the authenticity of such documents filed in connection with the Chapter 15 Petition and Verified Petition under section 1516(b) of the Bankruptcy Code, the requirements of section 1515 of the Bankruptcy have been satisfied.

### IV.    The UK Proceeding Should Be Recognized as a Foreign Main Proceeding.

21. Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding for which recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. Section 1516(c) of the

Bankruptcy Code further provides that, in the absence of evidence to the contrary, a debtor's registered offices are presumed to be the center of the debtor's main interests. The concept of "center of main interests" has been equated by courts to the concept of a debtor's "principal place of business." *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627,634 (Bankr. E.D. Cal. 2006).

    22.    England is the center of the Debtor's main interests. A review of the following (non-exhaustive) list of corporate functions supports a finding that the Debtor's center of main interest is located in London, England:

    (a)    The location of the corporate head offices of the Debtor is in London;

    (b)    All key strategic and operating decisions for the Debtor are made at the Debtor's main office in London;

    (c)    Virtually all key senior management are located in London;

    (d)    All key and strategic corporate functions are performed in London, including treasury, corporate finance and accounting, communications and investor relations, information technology and new business development;

    (e)    All books, records and key documents (including leases, insurance and other key corporate documents) are negotiated and maintained in London;

    (f)    Accounts receivable and accounts payable for the Debtor are managed from London; and

    (g)    The Debtor's primary banking, lending, cash management, audit and legal relationships are all with firms located in England.

Based upon the foregoing, it is beyond argument that the "nerve center" of the Debtor

is in England.[1]

23. In addition, recognizing the UK Proceeding as a foreign main proceeding would not be manifestly contrary to the public policy of the United States. Rather, granting such recognition is entirely consistent with the United States public policy of respecting foreign proceedings as codified in chapter 15 of the Bankruptcy Code. Insolvency proceedings in England are similar to cases under chapter 7 of the Bankruptcy Code in that UK law provides for a centralized process to assert and resolve claims against the Debtor's estates, maximizing distributions to stakeholders.

24. Based on the foregoing, the Foreign Representative respectfully submits that the Court is required to enter an order recognizing the UK Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

## NOTICE

25. The Foreign Representative proposes to notify all creditors of the filing of the Verified Petition in the form and manner set forth in the *Motion for Order Specifying the Form and Manner of Service of Notice,* filed concurrently herewith. The Foreign Representative believes that such notice and service constitutes reasonable and proper notice under the circumstances, and that no other or further notice is necessary or appropriate.

## NO PRIOR REQUEST

26. No previous request for the relief requested herein has been made to this or any other court.

---

[1] An entity is considered to have its principal place of business where its nerve center is located. *Hertz Corp. v. Friend*, 130 S.Ct. 1181,1186 (2010).

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto, granting (a) recognition of the UK Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code in respect of the Debtor;  (b) automatic relief as of right upon recognition of a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code;  (c) giving full force and effect to the UK Proceeding;  and (d) awarding such other and further relief as the Court deems just and proper.

Dated:  January 18, 2016  
Wilmington, Delaware

**CROSS & SIMON, LLC**

By: */s/ Kevin S. Mann*  
Christopher P. Simon (No. 3697)  
Kevin S. Mann (No. 4576)  
1105 N. Market St., Suite 901  
Wilmington, DE 19801  
(302) 777-4200  
csimon@crosslaw.com  
kmann@crosslaw.com  

*Counsel for the Foreign Representative*